UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 08-CV-3231 (JFB) (ETB)

———————————

EMANUEL BROWN,

Plaintiff,

VERSUS

COCA-COLA ENTERPRISES, INC., TED ROSEN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, STEVE SZUMERA, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, and MICHAEL VAN AKEN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,

Defendants.

———————————

**MEMORANDUM AND ORDER**
April 28, 2009

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Emanuel Brown (hereinafter, "Brown" or "plaintiff") brings this action against defendants Coca-Cola Enterprises, Inc. (hereinafter, "CCE"), Ted Rosen, in his individual and official capacity, Steve Szumera, in his individual and official capacity, and Michael van Aken, in his individual and official capacity (collectively, the "individual defendants") alleging the following: employment discrimination on the basis of race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"), Article 15 of the Executive Law of the State of New York §§ 290 and 296 (the "Human Rights Law") and 42 U.S.C. § 1981 ("Section 1981"); employment discrimination on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, as amended (the "ADEA") and the Human Rights Law; and unlawful retaliation for engaging in activities protected by the aforementioned statutes. Plaintiff seeks $40,000,000 in damages, punitive damages, attorney's fees and costs, a declaratory judgment stating that defendants violated his rights under the relevant statutes, and injunctive relief ordering defendants to correct all past and present violations of federal and state laws.

Defendants have moved to dismiss the action and/or stay the proceedings and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (2000), on

the grounds that plaintiff entered into a binding arbitration agreement with CCE under the "Solutions" program, which requires him to litigate the instant dispute with CCE and/or its employees in that forum.

Plaintiff submits that he never consented to any such agreement and, assuming *arguendo* that he had, CCE waived its right to enforce it by participating in the administrative investigation of plaintiff's discrimination complaint. For the reasons stated below, the Court concludes the following: (1) plaintiff is bound by the arbitration agreement between the parties, (2) defendants did not waive their right to enforce it, and (3) the motion to compel arbitration is granted and this lawsuit shall be stayed pending arbitration.

I. BACKGROUND

A. Facts

The following facts are taken from the Complaint ("Compl."), the Affidavit of Phillip M. Halpern, Esq. filed in support of the instant motion, the Declarations of Emanuel Brown and Frederick K. Brewington filed in opposition, and the exhibits attached thereto.[1] The facts drawn from plaintiff's complaint are not findings of fact by the Court, but rather assumed to be true for the purpose of deciding this motion and construed in the light most favorable to plaintiff, the non-moving party.

1. Plaintiff's Employment at CCE

Plaintiff is a fifty-eight year old African-American male. (Compl. ¶ 1.) On or about May of 1996, he was hired as an Account Manager by CCE in its Smithtown, New York office. (*Id.* ¶ 20.) Plaintiff received numerous accolades for his work as an Account Manager, but was passed over for promotion to District Sales Manager by lesser qualified Caucasian employees. (*Id.* ¶¶ 21-22.) After lodging a complaint about this discriminatory behavior, plaintiff was promoted to the position of District Sales Manager on or about August 3, 1998. (*Id.* ¶ 23.)

According to the complaint, based on his superior job performance in this position, plaintiff was then promoted to the position of Cold Drink Channel Manager – Education on or about June 18, 2003. (*Id.* ¶ 26.) Despite continued satisfactory job performance, plaintiff allegedly was denied the opportunity to question "on target" evaluations he received, threatened with termination in violation of Company policy when he refused to sign such an evaluation, and denied access to his "Talent Development Committee" ratings, which would have allowed him to address any perceived deficiencies in his job performance. (*Id.* ¶¶ 28-32.)

In 2006, plaintiff was interviewed by the New York State Department of Human Rights ("NYSDHR") and provided testimony in support of a former employee who filed a charge of discrimination against CCE. The NYSDHR disclosed plaintiff's involvement in an October 2006 determination regarding that

---

[1] The Court may properly consider documents outside of the pleadings for purposes of deciding a motion to compel arbitration. *See BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 Civ. 839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration.") (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32-33 (2d Cir. 2001)).

complaint. (*Id.* ¶ 41-43.)

Plaintiff alleges that he was the target of derogatory comments, racial slurs and hostile actions intended to undermine his authority, and that Ted Rosen, who worked alongside him as a District Manager in his region, particularly subjected him to discriminatory treatment. (*Id.* ¶ 49.) Further, Steve Szumera, in his capacity as plaintiff's supervisor, also allegedly subjected plaintiff to such treatment and his supervisor, Michael van Aken, condoned that improper behavior. (*Id.* ¶¶ 53-57.) According to the complaint, Szumera falsely accused plaintiff of reporting for work late and filed a report to that effect. (*Id.* ¶ 61.)

On or about February 15, 2007, plaintiff was informed that his job was being eliminated as part of a Reduction in Force ("RIF"), effective March 2, 2007. (*Id.* ¶ 34.) CCE had stated that any District Sales manager on a Performance/Progressive Discipline/Improvement Plan ("PIP") and/or any employee who had received a Final Warning would be first to be selected for the RIF. (*Id.* ¶ 35.) Prior to his notice of termination, plaintiff was not placed on PIP, nor did he receive a Final Warning; further, two younger, Caucasian employees with less experience than plaintiff were retained. (*Id.* ¶¶ 36-37.) Plaintiff alleges that CCE terminated him based on his race, age, and participation in the 2006 NYSDHR investigation.

2. The "Solutions" Program

On May 1, 2006, CCE's "Solutions" program was implemented in the Northeast Business Unit for all employees in that region, which included those employed at CCE's Smithtown, New York facility. (Lewis Aff. ¶ 10.) In advance of its implementation, on March 6, 2006, a "Solutions" announcement letter was mailed to all non-union employees of the Smithtown facility, including plaintiff, at the home addresses provided to CCE. (*Id.* ¶ 11, Ex. A.) The letter informed plaintiff that as of the effective date of the program's implementation, both CCE and its employees in the Northeast Business Unit would "agree to resolve all legal claims and other workplace conflicts through Solutions rather than through court." (*Id.*)

The mailing enclosed a program brochure, as well as a summary program description. (*Id.* ¶ 12, Exs. B-C.) The brochure described the four conflict resolution options available through Solutions, including arbitration, stating that "disputes which are not resolved in Talk, Support or Mediation will be finally solved in Arbitration rather than in court. If an employee files a lawsuit against the Company, the Company will ask the court to dismiss the lawsuit and refer it back to Solutions." (*Id.* ¶ 12, Ex. B.) The brochure also stated that "all employees who accept or continue employment with the Company agree to resolve all legal claims against the Company or an employee through Solutions rather than through court." (*Id.*)

The program description, also included in the mailing, stated that "Solutions applies to all workplace Conflicts, including Legal Disputes, among or between the Company and any person covered by the program. In Solutions, the terms 'Conflicts' and 'Legal Disputes' have special meanings. Conflicts are controversies or disagreements of any nature, including Legal Disputes. Legal Disputes are claims, demands, and controversies involving the potential violation of rights under statute, regulation, or other law." (*Id.*, Ex. C.) The description stated that "[y]ou are covered by Solutions if you are employed by the Company on or after the Effective Date of the program" and reiterated

3

that "by accepting or continuing employment with the Company after the Effective Date of the program, you agree to use Solutions to resolve any Legal Disputes or other Conflicts with the Company or any employee through Solutions rather than through court." (*Id.*)

On April 4, 2006, the Smithtown facility conducted a "Solutions" orientation program, wherein each attending employee received a copy of: (1) the program plan document; (2) the program "frequently asked questions" document; and (3) the PowerPoint presentation shown at the orientation. (*Id.* ¶ 13, Exs. D-F.) Plaintiff's signature appears alongside his printed name on the sign-in sheet for this orientation, and he does not dispute that he attended the session. (*Id.* ¶ 16, Ex. G.) The program plan document disseminated at the orientation stated as follows: "Except for some measures described in this document, the Solutions Program creates the only process for the final resolution of all Conflicts, including all Legal Disputes, defined below. *Therefore no Conflict can be taken to court, taken before a jury, or otherwise be made the subject of a lawsuit, whether by individual action or by class or collective action.*" (*Id.* ¶ 13, Ex. D at 1 (emphasis in original).) "Conflict" is defined, in part, as "any and all Legal Disputes," and "Legal Disputes," in turn, are defined, in part, as

> all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons and/or entities bound by this Program or by an agreement to resolve Conflicts under this Program. Legal Disputes can include:

> i. Any disagreement on the interpretation or scope of this Program;

> ii. Any contested matter or issue relating to the employment of an Employee, including the terms, conditions, and/or termination of employment with the Company;

> iii. Any other matter related to the relationship between an Employee and the Company, including . . . allegations of discrimination based on race, . . . national origin, age . . . retaliation because of participation in or use of the Program's options . . . .

(*Id.* ¶ 13, Ex. D at 2-3.) The program plan goes on to state that "[e]mployment or continued employment after the Effective Date of this Program constitutes consent by both the Employee and the Company to be bound by this Program, both during the employment and after termination of employment." (*Id.* ¶ 13, Ex. D at 11.) The document listing frequently asked questions, also disseminated at the orientation program, also stressed that continued employment constituted acceptance of the program's binding nature. (*Id.* ¶ 13, Ex. E at 2.)

3. The NYSDHR Proceedings

On May 3, 2007, plaintiff's counsel sent a letter to van Aken, outlining plaintiff's allegations of discrimination and seeking

4

either plaintiff's reinstatement to his old position or a severance package under plaintiff's terms. (*See* Brewington Decl., Ex. B.) In this letter, counsel requested that CCE respond by May 11, 2007. (*Id.*) By letter dated May 17, 2007 and again addressed to van Aken, plaintiff's counsel withdrew the "settlement offer" contained in the prior correspondence and informed van Aken that "your failure to address the serious concerns about which Mr. Brown has made you aware effectively serves to extinguish any need for Mr. Brown to continue to attempt pursuing this matter internally through the 'Solutions Program' or otherwise. Your actions/inactions now serve as a waiver of any internal process." (Brewington Decl., Ex. C.)

On May 29, 2007, plaintiff filed a charge of discrimination with the NYSDHR alleging unlawful discriminatory employment practices in violation of the Human Rights Law. (*Id.* ¶ 7.) Plaintiff cross-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging the same in violation of Title VII and the ADEA. (*Id.* ¶ 8.) On or about April 9, 2008, the NYSDHR issued a finding of "probable cause" supporting plaintiff's allegations that CCE engaged in unlawful discriminatory practices. (*Id.* ¶ 9.) On or about June 16, 2008, the NYSDHR issued a Recommended Order of Dismissal for Administrative Convenience of plaintiff's complaint, which the agency Commissioner adopted on or about July 30, 2008. (*Id.* ¶¶ 10-11.) The EEOC issued a "Right to Sue" letter to plaintiff on May 17, 2008. (*Id.* ¶ 12.) Plaintiff timely filed the instant lawsuit on August 8, 2008.

### B. Procedural History

Plaintiff filed the instant action on August 8, 2008. On November 5, 2008, defendants filed a motion to dismiss and/or stay the proceedings and compel arbitration. Plaintiff opposed the motion on December 5, 2008. Defendants filed their reply on December 17, 2008. Oral argument was held on April 27, 2009. This matter is fully submitted.

### II. STANDARD OF REVIEW

The Court must evaluate a motion to compel arbitration, pursuant to the FAA, under a standard similar to the standard for a summary judgment motion. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)); *Doctor's Assocs. v. Distajo*, 944 F. Supp. 1010, 1014 (D. Conn. 1996), *aff'd*, 107 F.3d 126 (2d Cir. 1997); *see also Mazza Consulting Group, Inc. v. Canam Steel Corp.*, No. 08-CV-38 (NGG), 2008 U.S. Dist. LEXIS 32670, at *2 (E.D.N.Y. Apr. 21, 2008). "When such a motion is opposed on the ground that no agreement to arbitrate has been made between the parties, a district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise." *Mazza Consulting Group, Inc.*, 2008 U.S. Dist. LEXIS 32670, at *2. "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

III. DISCUSSION

Defendant now moves to dismiss (or, in the alternative, stay) this action and compel arbitration, arguing that the parties are bound by an agreement to arbitrate. Plaintiff challenges the validity of that agreement on the grounds that plaintiff never made any such agreement and, even assuming *arguendo* he did, defendants waived any rights to enforce it by participation in the NYSDHR investigation. For the reasons set forth below, the Court finds that plaintiff's continued employment with CCE after the implementation of the "Solutions" program constituted an acceptance of its terms, which included an agreement to arbitrate any disputes such as the one presently before this Court. Moreover, defendants did not waive any rights to enforce that agreement. Therefore, defendants' motion to compel arbitration is granted and the Court will stay this lawsuit, rather than dismiss it, pending arbitration.

A. Agreement to Arbitrate

It is well-settled that the FAA generally requires that courts resolve issues of arbitrability in favor of arbitration. *See Garten v. Kurth*, 265 F.3d 136, 142 (2d Cir. 2001); *see also CPR (USA) Inc. v. Spray*, 187 F.3d 245, 254 (2d Cir. 1999) ("The existence of a broad agreement to arbitrate . . . creates a presumption of arbitrability, which is overcome only if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'") (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)); *accord Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 666 (2d Cir. 1997). Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement provided the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. In deciding whether an action should be sent to arbitration, the Second Circuit has instructed a district court to conduct the following inquiry:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163,

169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)). Here, plaintiff does not contest that the scope of the agreement at issue properly encompasses the instant dispute and that the statutory claims implicated are arbitrable.[2] Accordingly, the Court proceeds to the only issue at bar, namely, whether the parties actually agreed to arbitrate.

1. Legal Standard

As stated above, an agreement to arbitrate creates a presumption of arbitrability. "In deciding whether parties to a contract agreed to arbitrate a particular matter, 'courts should generally apply state-law principles that govern the formation of contracts.'" *Elwell v. Google, Inc.*, No. 05-CV-6487 (DLC), 2006 U.S. Dist. LEXIS 3114, at *9 (S.D.N.Y. Jan. 31, 2006) (quoting *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000)). To that end, "[i]t is 'well settled' under New York law that arbitration will not be compelled absent the parties' 'clear, explicit and unequivocal agreement to arbitrate.'" *Manigault v. Macy's East, LLC*, No. 07-4135-cv, 2009 WL 765006, at *2 (2d Cir. Mar. 25, 2009) (summary order) (quoting *Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144 (N.Y. 2008)). Such agreement may be expressed formally through words, or through a party's conduct. *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 582 (2d Cir. 2006) ("A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct. It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct.") (quoting *Jemzura v. Jemzura*, 36 N.Y.2d 496, 503-04 (N.Y. 1975) (internal citations omitted)). New York courts have determined that "[t]he conduct of a party may manifest assent if the party intends to engage in such conduct and knows that such conduct gives rise to an inference of assent." *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 94 (N.Y. 1999) (internal citation omitted). In the employment context, "[a]n employee may consent to a modification to the terms of employment by continuing to work after receiving notice of the modification." *Manigault*, 2009 WL 765006, at *2 (citing *Hanlon v. MacFadden Publ'ns, Inc.*, 302 N.Y. 502, 505-06 (N.Y. 1951), *Bottini v. Lewis & Judge Co.*, 621 N.Y.S.2d 753, 754 (N.Y. App. Div. 1995) and *Waldman v. Englishtown Sportswear, Ltd.*, 460 N.Y.S.2d 552, 555 (N.Y. App. Div. 1983)).

2. Application

Here, plaintiff argues that he never agreed to arbitrate his discrimination claims because there was no negotiation between the parties and no agreement that adherence to the terms of the "Solutions" program was a "mandated and accepted term and condition of continued employment." (Plaintiff's Memorandum of Law, at 4.) However, it is undisputed that (1) on March 6, 2006, CCE mailed plaintiff notification of the implementation of the "Solution" program, enclosing a program brochure which informed him that "all

---

[2] It is well settled that statutory discrimination claims can be the subject of an arbitration clause. *See, e.g., Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 27-28 (1991) (finding ADEA claims arbitrable); *Desiderio v. National Ass'n of Secs. Dealers, Inc.*, 191 F.3d 198, 204-05 (2d Cir. 1999) (finding Title VII claims arbitrable); *Fletcher v. Kidder, Peabody & Co.*, 619 N.E.2d 998, 1004, (N.Y. 1993) (finding discrimination claims under New York Executive Law § 296 arbitrable).

employees who accept or continue employment with the Company agree to resolve all legal claims against the Company or an employee through Solutions rather than through court"; (2) in that same mailing, CCE also enclosed a "Solutions" program description which stated that "[y]ou are covered by Solutions if you are employed by the Company on or after the Effective Date of the program" and "by accepting or continuing employment with the Company after the Effective Date of the program, you agree to use Solutions to resolve any Legal Disputes or other Conflicts with the Company or any employee through Solutions rather than through court"; (3) on April 4, 2006, CCE conducted a "Solutions" orientation, which plaintiff attended, wherein CCE disseminated a "Solutions" program plan to all attendees stating that "[e]mployment or continued employment after the Effective Date of this Program constitutes consent by both the Employee and the Company to be bound by this Program, both during the employment and after termination of employment"; and (4) plaintiff continued to be employed by CCE after the "Solutions" implementation date 8of May 1, 2006, until March 2, 2007.³

By continuing his employment with CCE after receiving multiples notices regarding the implementation of the "Solutions" program, plaintiff's conduct constituted an acceptance of the terms contained therein, including the agreement to arbitrate any legal disputes. Alhough plaintiff never signed any formal document acknowledging that the implementation of the "Solutions" program would preclude the filing of any future legal claims in this judicial forum, he received the multiple notices supplying that information and continued with his employment, and "New York, unlike other jurisdictions, has found that continued employment, without more, is sufficient to manifest assent." *Manigault*, 2009 WL 765006, at *2 (internal citation omitted) (employee's continued employment constituted an agreement to arbitrate her discrimination claim despite the fact that she claimed not to have received the employer mailing stating as much and she never signed a document to that effect); *see Brown v. The St. Paul Travelers Cos.*, 559 F. Supp. 2d 288, 291 (W.D.N.Y. 2008) (same,

---

³ Specifically, in his affidavit in response to the motion, plaintiff acknowledged the following: (1) "I do not deny the existence of a *Solutions Program* within Coca-Cola nor do I deny attending a roll out/orientation session of the *Solutions Program*, however, I do have objection to the claim of me attending a *Solutions Management Training* class" (Brown Decl. ¶ 9); and (2) "I do not deny receiving *Solutions* handout material. However, my receipt of this material and attending an[ ] orientation is not a binding contract or an agreement to the program. Indeed, I never understood it to be a contract of any kind or a waiver of any of my rights." (*Id.* ¶ 10.) Plaintiff also acknowledged that he participated, as a management employee, in a *Solutions* mediation of a former employee. (*Id.* ¶ 8.) With respect to the factual dispute regarding whether he attended the

*Solutions Management* class, that dispute is immaterial for purposes of this motion because the other materials that plaintiff concedes he received in the mail and at the roll out/orientation session state in a clear and unequivocal fashion that he was consenting to the binding arbitration through the *Solutions* program by his continued employment. Similarly, the fact that plaintiff asserts that he did not understand it to be a contract, and that this issue was never explained to him orally in a satisfactory manner, is insufficient to defeat defendant's motion in light of the clear language in the materials that he received in the mail and at the orientation that he concedes he attended. In short, the undisputed evidence regarding the promulgation of the policy, plaintiff's receipt of that policy, and the plain language of that policy render these other factual disputes immaterial.

stating that "while there is no signed acknowledgment of plaintiff's receipt of the handbook [containing the terms of the agreement], . . . plaintiff was advised that compliance with the arbitration policy was a condition of continued employment, she was advised that it was her responsibility to 'read and understand' all of the company policies including the arbitration policy, and she continued her employment with defendant."); *Beletsis v. Credit Suisse First Boston, Corp.*, No. 01 Civ. 6266 (RCC), 2002 WL 2031610, *3 (S.D.N.Y. Sept. 4, 2002) (stating that "when an arbitration policy is a condition of employment, . . . an employee 'will be deemed to have accepted' an arbitration agreement when she continues to work after the promulgation of the arbitration policy") (citing *Chanchani v. Salomon/Smith Barney, Inc.*, No. 99 Civ. 9219 (RCC), 2001 WL 204214, *3 (S.D.N.Y. Mar. 1, 2001)); *Gonzalez v. Toscorp Inc.*, No. 97 Civ. 8158 (LAP), 1999 WL 595632, at *2 (S.D.N.Y. Aug. 5, 1999) (plaintiff assented to the arbitration agreement in the employee handbook when, having been informed that the policy was a condition of continued employment, he continued his employment with the company past the implementation date of the policy).

Although plaintiff argues that he did not agree to arbitrate because his signature on the sign-in sheet for the orientation program was simply an acknowledgment of his attendance rather than an agreement to the terms of the program, this argument is without merit. Plaintiff's attendance at the program alone is not dispositive to the inquiry, but is rather one component of the uncontroverted evidence that he received clear notice that his continued employment would constitute an agreement to be bound by the arbitration provisions in the "Solutions" program. It is plaintiff's course of conduct after receiving this clear notice, *i.e.*, his continued employment with CCE after the implementation date of that program (rather than his attendance at the orientation alone), that manifests his assent to be bound by its terms.[4] *See, e.g., Lee v. Coca-Cola Enters., Inc.*, Civil Action No. 07-1425, 2008 U.S. Dist. LEXIS 29437, at *10 (W.D. La. Mar. 4, 2008) ("Plaintiff's signature on the sign-in sheet is important only because it is a piece of evidence that Plaintiff was notified in certain terms that his continued employment would constitute his consent to the Solutions Program. There is plentiful other evidence found in the affidavits and documents submitted by Coca-Cola that Plaintiff received such notice, and it is undisputed that Plaintiff continued his employment. The unchallenged evidence establishes that Plaintiff consented to arbitration when he continued his employment with Coca-Cola after being told that continued employment would constitute consent to the arbitration agreement.").

Equally unavailing is plaintiff's citation to the Second Circuit decisions in *Rogers v. NYU*, 220 F.3d 73 (2d Cir. 2000) and *Pyett v. Pennsylvania Building Co., et al.*, 498 F.3d 88

---

[4] The Court is also not persuaded by plaintiff's argument that the language of the arbitration provision in the various "Solutions" program brochures and descriptions is not binding. (*See, e.g.,* Plaintiff's Memorandum of Law, at 5 (arguing that because one phrase in the program description states that "'[t]hrough Solutions you *can* resolve workplaces conflicts fairly, quickly, and inexpensively through Talk, Support, Mediation and Arbitration'" and does not use the words "'must' or 'shall,'" the Court should question the mandatory nature of the program).) The use of the word "can" in one quotation pulled from the various "Solutions" materials provided to plaintiff does not eviscerate the clear and unequivocal language in the materials that the arbitration policy was a condition of continued employment.

(2d Cir. 2007), in which the Court of Appeals held generally that "that a collective bargaining agreement could not waive covered workers' rights to a judicial forum for causes of action created by Congress." *Pyett*, 498 F.3d at 91 n.3, 92 (citation omitted); *see also Rogers*, 220 F.3d at 75 (same). First, those opinions address arbitration clauses contained in collective bargaining agreements and plaintiff readily concedes that "that there is no collective bargaining agreement in the instant case." (Plaintiff's Memorandum of Law, at 5.) Second, and more critically, the *Rogers* decision was abrogated, and the *Pyett* decision reversed, by the Supreme Court's decision in *14 Penn Plaza LLC v. Pyett*, 2009 U.S. LEXIS 2497 (Apr. 1, 2009),[5] wherein the Court ruled that a clause in the collective bargaining agreement between appellant employer and appellee employees mandating arbitration for all claims brought pursuant to the ADEA was, in fact, permissible because it was a "condition of employment" subject to negotiation between the union and employer under the National Labor Relations Act, 29 U.S.C. § 159(a). *Id.* at *19. Specifically, the Court rejected any notion that arbitration provisions in collective bargaining agreements that waive an employee's right to bring a statutory discrimination action in a judicial forum are unenforceable, as a matter of law. *See id.* at *40-*42.

Therefore, plaintiff's argument that the outcome of the *Rogers* and *Pyett* cases should control the Court's decision herein fails because even if those opinions remained good law for the propositions cited by plaintiff, they would be inapplicable as the instant case does not involve a collective bargaining agreement. Moreover, the Second Circuit has clearly

---

[5] The Court recognizes that the Supreme Court issued this opinion on April 1, 2009, almost four months after this matter was fully briefed.

determined that a non-union employee's continued employment after receiving notice of the implementation of a binding arbitration policy may constitute assent to its terms. *Manigault*, 2009 WL 765006, at *2.

Finally, plaintiff argues that the arbitration agreement is unconscionable so as to be unenforceable and therefore, he could not have assented to be bound by its terms. Specifically, plaintiff submits that because "the terms of the *Solutions Program* are slanted to deprive employees of the option to seek recourse in the courts," its enforcement would be "unreasonable or unjust." (Plaintiff's Memorandum of Law, at 6-7 (citations omitted).) Although it is well-settled that "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract," *Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 33 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985)), plaintiff has provided no evidence, or even allegations, of fraud or duress to support his claim of unconscionability. On the contrary, plaintiff simply attacks the nature of the arbitration process as inherently unfair. (*See* Plaintiff's Memorandum of Law, at 6 ("[T]he benefit of having the employee divulge all of his/her claims first to the entity against whom he/she is complaining about, is a clear term in favor of the employer. Likewise, being a[b]le to to select or help select forum and arbitrator is a benefit not normally allowed to the party that is the subject of the complaint.").) However, the law is clear that "a mandatory arbitration clause is a reasonable means by which an employer can seek to protect itself from protracted litigation" and is not, by itself,

unconscionable. *Gonzalez*, 1999 WL 595632, at *3 (citing *Sablosky v. Gordon Inc.*, 73 N.Y.2d 133, 138 (N.Y. 1989)); *see also Gilmer*, 500 U.S. at 33 ("Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."). Furthermore, as outlined *supra*, arbitration agreements, such as the one before the Court, that recognize continued employment as assent to contractual terms, have been upheld and enforced by numerous courts, and this Court agrees with the reasoning and analysis contained in those decisions, which apply to the circumstances here. Accordingly, given the absence of any suggestion of fraud or duress, plaintiff's unconscionability argument must fail.

## B. Waiver

Having determined that plaintiff did assent to the arbitration agreement, the Court proceeds to the question of whether CCE waived its right to enforce that agreement by participating in the NYSDHR investigation of plaintiff's claims. For the reasons set forth below, the Court concludes that CCE's participation in that action did not constitute a waiver of any rights under the "Solutions" program.

### 1. Legal Standard

As a threshold matter, the Court notes that "[o]rdinarily a defense of waiver brought in opposition to a motion to compel arbitration . . . is a matter to be decided by the arbitrator." *Bell v. Cendant Corp.*, 293 F.3d 563, 569 (2d Cir. 2002) (quoting *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 82-83 (2d Cir. 1998)). However, the Second Circuit has "distinguished between cases where the waiver defense was based on prior litigation by the party seeking arbitration – when the court should decide the issue of waiver – and those when the defense was based on other actions," when the arbiter should make the determination. *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438, 456 (2d Cir. 1995). Because the "prior litigation" that plaintiff submits constitutes waiver by the defendants involved a controversy "identical" to the one presented herein, the Court may properly determine the issue of waiver. *See, e.g., Bell*, 293 F.3d at 569.

As stated *supra*, courts are guided by a strong federal policy favoring arbitration and, therefore, waiver of the right to arbitrate "is not to be lightly inferred." *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968); *accord Leadertex v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995). Indeed, courts only find waiver "when the party against whom waiver is asserted has engaged in substantial litigation activity resulting in prejudice to the party asserting waiver." *Brownstone Inv. Group v. Levey*, 514 F. Supp. 2d 536, 550 (S.D.N.Y. 2007). With regards to "prejudice," the Second Circuit has determined that the term,

> as defined by our cases refers to the inherent unfairness -- in terms of delay, expense, or damage to a party's legal position -- that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue . . . . Thus, we have found that a party waived its right to arbitration when it engaged in extensive pre-trial discovery and forced its adversary to respond to substantive motions, delayed invoking arbitration rights by filing multiple appeals and

11

substantive motions while an adversary incurred unnecessary delay and expense, and engaged in discovery procedures not available in arbitration.

Therefore, in determining whether [a party] has waived its right to arbitration, we will consider such factors as (1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice.

*PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997) (internal citations omitted). The Court must examine each factor and determine whether the defendants' "conduct demonstrates a desire to litigate [the instant claims] in a judicial forum rather than in an arbitration." *Nokia Corp. v. Interdigital, Inc.*, No. 08-1642-cv, 2008 WL 2951912, at *1 (2d Cir. July 31, 2008) (summary order) (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 229 (2d Cir. 2001)).

2. Application

Plaintiff argues that by participating in the NYSDHR's investigation of his discrimination claims, defendants waived all rights to enforce the arbitration agreement between the parties. Specifically, plaintiff submits that the "protracted year long" investigation by the NYSDHR into his allegations of discrimination "required [him] to not only expend time, resources, money and engage in the disclosure of information" but also to "go through the expense and effort to draft, file, serve and re-serve the Federal Complaint," and as a result, he has suffered substantial prejudice. (Plaintiff's Memorandum of Law, at 9.) Thus, because defendants failed to raise the arbitration issue during the NYSDHR proceedings, plaintiff submits that they have waived any right to do so in this forum. For the reasons set forth below, the Court disagrees.

It is undisputed that the NYSDHR investigation, which arose from the same nexus of facts implicated herein, lasted approximately one year, and that by participating in it, defendants "engaged in discovery procedures not available in arbitration." However, it is also undisputed that, although defendants did not invoke the "Solutions" arbitration clause while responding to the NYSDHR investigation, they did raise it before this Court, in lieu of filing an answer, upon receipt of plaintiff's federal complaint. Further, it is worth noting that plaintiff initiated the NYSDHR investigation by filing a formal complaint, and there is no basis to conclude that his rebuttal to defendant's *response* to the investigation caused him prejudice warranting a finding of waiver, particularly when (1) defendants were obligated by state law to respond to the complaint or else be subject to an entry of default, *see, e.g.,* 15 N.Y. Exec. Law § 297(b) ("If the respondent fails to answer the complaint, the hearing examiner designated to conduct the hearing may enter the default and the hearing shall proceed on the evidence in support of the complaint"); and (2) any motion to compel brought during that investigation would have been a futile act because, as a non-party to the arbitration agreement, the NYSDHR was not bound by its terms. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (ruling that, as the EEOC was not a party to the arbitration

agreement between the claimant and the alleged discriminatory employer, it could not be compelled to arbitration pursuant to that agreement).

Accordingly, it can be hardly be said that defendants "forced" plaintiff to litigate the issue they presently seek to refer to arbitration or that their conduct during the NYSDHR investigation "demonstrate[d] a desire to litigate [the instant claims] in a judicial forum rather than in an arbitration." *Nokia Corp.*, 2008 WL 2951912, at *1. On the contrary, it appears that defendants simply opted not to make an utterly futile attempt to compel arbitration during the NYSDHR investigation. As such, the Court finds no basis for waiver where defendants properly responded to an agency investigation and did not needlessly delay its administration with a futile attempt to compel arbitration. Courts within the Second Circuit as well as those in other jurisdictions faced with similar facts have arrived at the same conclusion. *See Ferguson v. United Health Care*, No. 3:08CV1389 (MRK), 2008 WL 5246145, at *4 (D. Conn. Dec. 17, 2008) ("Since [defendant] could not have halted the [agency] proceedings once the agency decided to look into [plaintiff]'s complaint, it cannot be that [defendant] waived its rights under the Arbitration Policy for failing to try to do so."); *see also Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 16 (1st Cir. 2005) ("[A]n employer cannot waive its right to arbitration by failing to raise the arbitration defense with the EEOC or by failing to initiate arbitration during the pendency of the EEOC proceedings. The employer's failure to initiate arbitration during the pendency of such proceedings merely reflects a desire to avoid inefficiency and is not action inconsistent with a desire to arbitrate."); *Volpe v. Jetro Holdings*, Civil Action No. 08-3521, 2008 U.S. Dist. LEXIS 93404, at *16 (E.D. Pa. Nov. 14, 2008) ("Defendants' failure to raise an arbitration defense during administrative proceedings [investigating claims of discrimination] did not constitute a waiver of that defense"); *Barna v. Wackenhut Servs.*, Civ. A. No. 07-147, 2007 WL 3146095, at *6 (N.D. Ohio Oct. 25, 2007) (defendant's failure to demand arbitration during alternative dispute resolution proceedings and when plaintiff filed EEOC complaint did not constitute waiver); *Taleb v. AutoNation USA Corp.*, Civ. A. No. 06-2013, 2006 WL 3716922, at *6-*7 (D. Ariz. Nov. 13, 2006) (defendant did not waive arbitration defense by failing to raise it during agency proceedings); *Santos v. GE Capital*, 397 F. Supp. 2d 350, 356 (D. Conn. 2005) (same); *Gonzalez v. GE Group Admrs., Inc.*, 321 F. Supp. 2d 165, 171-72 (D. Mass. 2004) (same); *Hankee v. Menard, Inc.*, Civ. A. No. 01-661, 2002 WL 32357167, at *5 (W.D. Wis. Apr. 15, 2002) (same); *Medina v. Hispanic Broad. Corp.*, Civ. A. No. 01-2278, 2002 WL 389628, at *4 (N.D. Ill. Mar. 12, 2002) (same); *Roberson v. Clear Channel Broad., Inc.*, 144 F. Supp. 2d 1371, 1375 (S.D. Fl. 2001) (same).

However, although a party's participation in an agency investigation does not by itself constitute participation in litigation that would support a finding of waiver, this Court must look at all of the relevant factors to determine whether a waiver has occurred. Specifically, in reviewing the relevant factors – namely, time elapsed, amount of litigation, and prejudice to the non-moving party – the Court finds that plaintiff has failed to establish waiver. While the NYSDHR investigation lasted approximately eleven months, defendants sought leave to file the instant motion on the same day that CCE was properly served with plaintiff's complaint. Further, during the pendency of the federal action, defendants have not answered,

counterclaimed, conducted discovery or participated in any settlement conferences or mediation sessions, and have filed only the single motion now pending before the Court. To that end, the only prejudice plaintiff alleges to have suffered as a result of the federal proceedings is the effort expended to "draft, file, serve and re-serve the Federal Complaint."[6] In contrast, "those cases in which [the Second Circuit] ha[s] found a waiver have involved substantially more protracted involvement in litigation than the instant case, often with the party charged with waiver delaying until the very last opportunity or even until it has lost on the merits." *Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink and Brewery Workers Union Local 812, Int'l Bhd. of Teamsters*, 242 F.3d 52, 58 (2d Cir. 2001) (no waiver where party seeking to compel arbitration participated in federal litigation for approximately four months and, "during that time, answer[ed] [the] complaint, . . . enter[ed] into a protective order and stipulation for discovery, and obtain[ed] substantial discovery"); *cf. Arbercheski v. Oracle Corp.*, No. 06-3472-cv, 2009 WL 692114, at *2 (2d Cir. Mar. 18, 2009) (summary order) (affirming district court's finding of waiver where party seeking to compel arbitration had participated in federal litigation against a *pro se* plaintiff for eleven months, during which time it filed and fully briefed a motion to dismiss that did not raise the defense of arbitration, conducted extensive discovery and participated in a failed mediation as well as a scheduling conference, causing plaintiff *pro se* significant prejudice in terms of costs incurred and loss of claims subject to the arbitration clause that were dismissed by the court); *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998) (affirming district court's finding of waiver where party seeking to compel arbitration participated in federal litigation for fifteen months, answered the complaint but failed to plead a defense of arbitration, filed motions both to transfer venue and stay the proceedings, conducted extensive discovery and participated in two settlement conferences before filing a motion to compel arbitration "on the eve of trial"); *Manos v. Geissler*, 321 F. Supp. 2d 588, 594 (S.D.N.Y. 2004) (waiver found where defendant actively participated in federal litigation for eighteen months, conducted discovery, and appeared in three conferences before the Court before filing a motion to compel arbitration twelve weeks prior to the calendared trial date).

Finally, the Court has not overlooked plaintiff's assertion that defendants enjoyed the benefits of discovery in the NYSDHR investigation that would not otherwise be available in the arbitral forum, and the Second Circuit has determined that access to such discovery can constitute prejudice. *See Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp.*, 996 F.2d 1478, 1480 (2d

---

[6] Plaintiff filed the instant complaint with the Court on August 8, 2008 and attempted to serve CCE and the individual defendants on September 23, 2008. (*See* Docket Entry #3, dated September 24, 2008.) Plaintiff later filed an executed return of the summons issued to CCE, indicating that CCE was properly served on October 14, 2008. (*See* Docket Entry # 5, dated October 15, 2008.) Defendants filed a letter requesting leave to file the instant motion on October 14, 2008, contesting that the individual defendants were properly served with the complaint in this action but noting that they would join in CCE's motion to compel arbitration. (*See* CCE's Letter to the Court, dated October 14, 2008.) Even accepting September 23, 2008 as the proper date of service, though, the Court notes that less than a month elapsed between that date and the date on which defendant sought leave to file the instant motion.

Cir. 1993) (prejudice can be established where a party took advantage of discovery that otherwise would have been unavailable). However, access to discovery is but one factor courts have weighed in determining prejudice and is not outcome determinative of that inquiry. *See Brownstone Inv. Group, LLC v. Levey*, 514 F. Supp. 2d 536, 544 (S.D.N.Y. 2007) (rejecting the proposition that a "finding of prejudice may automatically or categorically follow by mere reason of the party engaging in litigation discovery, in and of itself"). A close review of the cases where such discovery warranted a finding of prejudice reveals that "in each of these cases, the prejudice the Circuit Court upheld was grounded on some unique circumstance that derived from the extent of the litigation that had occurred and included the discovery taken as just one element for consideration, rather than resting on the mere occurrence of the discovery alone." *Id.*; *see, e.g., In re S & R Co. of Kingston*, 159 F.3d at 83 (the issue of waiver "is fact-specific and there are no bright-line rules"); *Leadertex v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (despite defendant's participation in substantial discovery, "waiver may not . . . stand firmly on defendant's use of discovery"). Therefore, defendants' access to discovery during the NYSDHR investigation alone cannot support a finding of prejudice "in isolation of other facts," *Brownstone Inv. Group, LLC*, 514 F. Supp. 2d at 544, including those enumerated above. Accordingly, because defendants have not engaged in "substantial litigation activity" causing resultant prejudice to the plaintiff, they have not waived their right to arbitrate the instant claim.[7]

---

[7] Plaintiff also argues that CCE waived its right to enforce the arbitration agreement by failing to respond when "plaintiff specifically extended himself to Defendants in hopes of resolving all issues via Defendants' *Solutions Program*."

C. Dismissal

The remaining question is whether the Court should dismiss the case or stay the case pending arbitration. As set forth below, the Court concludes, in its discretion, that the case should be stayed while the Court compels arbitration.

This Court recognizes that some courts have held that where "none of plaintiff's claims remains to be resolved by the court, and therefore there is no reason to stay – rather than dismiss – this action." *Mahant v. Lehman Bros.*, No. 99 Civ. 4421 (MBM), 2000 WL 1738399, at *3 (S.D.N.Y. Nov. 22, 2000); *see also Mazza Consulting Group, Inc.*, 2008 U.S. Dist. LEXIS 32670, at *19-*20; *Perry v. N.Y. Law School*, No. 03 Civ. 9221 (GBH), 2004 WL 1698622, at *4

---

(Plaintiff's Memorandum of Law, at 7.) Specifically, plaintiff directs the Court's attention to the May 5, 2007 letter from plaintiff's counsel to van Aken and argues that by failing to respond to the letter, CCE waived all rights to seek resolution of plaintiff's claims through the program. The Court finds this argument unavailing. The May 3, 2007 letter from plaintiff's counsel makes no mention of the "Solutions" program or any desire on plaintiff's part to participate in it; rather, it simply urges a comprehensive resolution, in connection with a proposed Separation Agreement, of all issues raised by plaintiff regarding his employment and termination. Similarly, the May 17, 2007 letter only mentions the "Solutions" program in the context of advising CCE that it was plaintiff's position that the Company had waived any ability to invoke that internal process because of its failure to respond to the May 3, 2007 letter. Given these circumstances, defendants' mere failure to respond to these letters cannot constitute a specific waiver of the right to enforce the terms of the program's arbitration agreement once litigation had been initiated.

(S.D.N.Y. July 28, 2004). However, in this instance, the Court believes that the more appropriate action is to stay the proceedings and compel arbitration, rather than grant a dismissal. *See Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 561 (7th Cir. Feb. 14, 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright.") (internal quotations and citations omitted); *see also Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. May 13, 2004) ("[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.").

### IV. CONCLUSION

For the foregoing reasons, defendants' motion to stay the proceeding and compel arbitration is granted. The motion is denied in all other respects.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 28, 2009
Central Islip, New York

\* \* \*

Attorney for plaintiff is Frederick K. Brewington, Esq., Law Offices of Frederick K. Brewington, 50 Clinton Street, Suite 501, Hempstead, NY 11550. Attorneys for defendants are Philip M. Halpern, Esq., Collier, Halpern, Newberg, Nolletti & Bock LLP, One North Lexington Avenue, 15th Floor, White Plains, NY 10601 and Bradford G. Harvey and Ian K. Leavy, Esqs., Miller & Martin, LLP, 832 Georgia Avenue, Chattanooga, TN 37402-2289.